**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FOUR WIND TRUCKING, INC. | ) | Case No. 24-04983 |
| | ) | |
| | ) | |
| Debtor. | ) | Hon. Donald R Cassling |

**SECOND AMENDED SMALL BUSINESS UNDER CHAPTER 11 PLAN OF REORGANIZATION DATED OCTOBER 14, 2024  FILED BY FOUR WIND TRUCKING, INC.**

This Second Amended Plan of Reorganization (the "Second Amended Plan") under Chapter 11 of the Title 11 of the United States Code ("Bankruptcy Code") proposes to pay creditors of FOUR WIND TRUCKING INC.(the "Debtor" or "FOUR WIND TRUCKING") from future revenues generated by the Debtor's business.  The Debtor is a Sub Chapter V Small Business Debtor, and this Plan is governed by Sub Chapter V of Chapter 11 of the U.S. Bankruptcy Code.

The Plan provides that all administrative creditors will be paid in full on the Effective Date of the Plan (which is 30 days after the Order confirming the Plan is a final Order) unless otherwise agreed.  Priority tax claims will receive 100% of their allowed claims over the period of the Plan term (5 years).  Secured Creditors will be paid 100% of their secured claims under Class 1 of the Plan – see below.  Class 2 general unsecured creditors will receive a pro rata share of the Unsecured Creditor Payment (defined below) over a period of 5 years, which shall equal approximately 2% distribution on their claims.  Class 3 Claims of Equity Holders will not receive a distribution unless all other classes of creditors receive payment in full.

All creditors and equity security holders should review this Plan in its entirety.  **Your rights may be affected. You should read these papers carefully and discuss with your attorney.  A Ballot Form is attached hereto as Exhibit A.**

**Exhibits to this Plan include:**

A.  Ballot Form
B.  Liquidation Analysis
C.  Projections
D.  Summary of Monthly Operating Reports

History of the Debtor is located in Article IV of the Plan below.

# ARTICLE I
## *Classification of Claims and Interests*

1.01   Class 1   Secured Claims
    Class 1(a) – Banterra Bank
    Class 1(b) – PNC Bank, N.A.
    Class 1(c) – Paccar Financial Corp.
    Class 1(d) – ITC
    Class 1(e) – Anchor Acceptance Corp
    Class 1(f) – Marlin Business Corporation
    Class 1(g) – The Huntington National Bank
    Class 1(h) – Amur Equipment Finance
    Class 1(i) – Small Business Administration

1.02   Class 2   General Unsecured Claims: Allowed claims of creditors which are unsecured.

1.03   Class 3   Equity Interests in the Debtor.

# ARTICLE II
## *Treatment of Administrative Expense Claims*
## *Priority Tax Claims and U.S. Trustee Fees*

2.01   Unclassified Claims.  Under §1123(a)(1) of the Bankruptcy Code, administrative expense claims and priority tax claims are not in classes.

2.02   Administrative Expense Claims.

   a. *Professional Fees*.  Each holder of an administrative expense claim allowed under §503 of the Bankruptcy Code will be paid in full on the Effective Date of this Plan (as defined in Section 7.01), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.  For fees approved after the Effective Date and before entry of a final decree, payment will be made on the 15th day after entry of an order approving fees.

   b. *United States Trustee Fees*.  This case is a Sub Chapter V Chapter 11 case.  As such, no U.S. Trustee fees are required to be paid under 28 U.S.C. §1930(a)(6).

   c. *Sub Chapter V Trustee Fees*.  All fees required to be paid to the appointed Sub Chapter V Trustee pursuant to Court order shall be paid in full on the Effective Date in cash.  For fees approved after the Effective Date and before entry of a final decree, payment will be made on the 15th day after entry of an Order approving fees.

2.03   <u>Priority Tax Claims</u>.  Each holder a priority tax claim will be paid in full in equal monthly payments commencing on or before the Effective Date and paid in full on or before the 5th anniversary of the Petition Date, plus interest at a rate of 3%.  At the Debtor's election, priority tax claims can be pre-paid at any time without penalty.  There is one (1) priority claim filed in this case by the Internal Revenue Service (Claim No. 9-1) in the amount of $10,416.93 of which $9,178.43 is asserted as priority for interest due through the Petition Date.  The priority portion of the IRS Claim shall be paid pursuant to this Section 2.03. The remainder of the claim ($1,238.50) is asserted as unsecured for outstanding penalties due to the IRS, and shall be paid as a Class 2 Claim.

# ARTICLE III

*Treatment of Claims and Interests Under the Plan*

Claims and interests shall be treated as follows under this Plan:

**3.01   Class 1 – Secured Claims**

**(a) Class 1(a) – Secured Claim of Banterra Bank**

Banterra Bank ("Banterra") asserts a secured claim against the Debtor's estate in the amount of $10,867.43 (the "Banterra Secured Claim") secured by a lien on 2020 Vanguard Dry Van trailer  (listed on Schedules as Asset 47.1) (the "Banterra Collateral").

The Debtor intends to retain Banterra Collateral. Banterra shall be paid in equal monthly payments of principal and contract rate of interest of 7.9% for a period of 60 months, in the amount  of $220 per month. Monthly payments shall commence on the 15th day of the month following the Effective Date of the Plan, and shall continue on the 15th date of each month thereafter until the Banterra Claim is paid in full.

Banterra shall retain its lien on and security interest in the Banterra Collateral until its Secured Claim is paid in full.  The Debtor may pre-pay the Secured Claim of Banterra at any time during the Plan term without penalty.  The Debtor shall timely make all of its payments and continue to insure and maintain the Banterra Collateral.  All of the provisions, requirements, terms and conditions contained in the loan documents entered into between Banterra and the Debtor (the "Banterra Loan Documents") shall remain in effect unless expressly waived or amended herein.

The Debtor shall have 15 days to cure any default under the Plan after written notice thereof of the alleged default.

The Debtor shall commence adequate protection payments to Banterra as of June 15, 2024, with all adequate protection payments to be applied against the Banterra Secured Claim upon confirmation of the Plan.  Adequate protection payments shall be $220 per month and shall continue until the Plan is confirmed, at which time the Debtor shall commence payments to Banterra under the Plan.

Class 1(a) is not impaired.

### (b) Class 1(b) – Secured Claim of PNC Bank

PNC Equipment Finance LLC ("PNC") asserts a secured claim against the Debtor's estate in the amount of $10,592.19 (the "PNC Secured Claim"), secured by a lien on 2021 Wabash dry van (listed on Schedules as Asset 47.1); and (b) 2022 Freightliner Cascadia (listed on Schedules as Asset 47.10) (the "PNC Collateral").

The Debtor intends to retain the PNC Collateral.

The Debtor shall pay PNC the sum of $10,592.19 (the "PNC Secured Claim") over a period of 60 months in equal monthly payments of principal with interest at 8.1% per annum, in the amount of $215.28 per month. Monthly payments shall commence on the 15th day of the month following the Effective Date of the Plan, and shall continue on the 15th date of each month thereafter until the PNC Secured Claim is paid in full

PNC shall retain its lien on and security interest in the PNC Collateral until its Secured Claim is paid in full. The Debtor may pre-pay the Secured Claim of PNC at any time during the Plan term without penalty. The Debtor shall timely make all of its payments and continue to insure and maintain the PNC Collateral. All of the provisions, requirements, terms and conditions contained in the loan documents entered into between PNC and the Debtor (the "PNC Loan Documents") shall remain in effect unless expressly waived or amended herein.

The Debtor shall have 15 days to cure any default under the Plan after written notice thereof of the alleged default.

The Debtor shall commence adequate protection payments to PNC as of June 15, 2024, with all adequate protection payments to be applied against the PNC Secured Claim upon confirmation of the Plan. Adequate protection payments shall be $300 per month and shall continue until the Plan is confirmed, at which time the Debtor shall commence payments to PNC under the Plan.

Class 1(b) is not impaired.

### (c) Class 1(c) – Secured Claim of Paccar Financial Corp.

Paccar Financial Corp. ("Paccar") asserts a claim against the Debtor's estate in the amount of $94,509.61 as of October 8, 2024, plus interest, late charges (if any), and reasonable attorney fees from October 9, 2024 until paid in full (the "Paccar Secured Claim"). The Paccar Secured claim is secured by a lien on (a) a 2020 Kenworth truck (Asset 47.3 in the Debtor's Schedules); and (b) a 2020 Kenworth Truck (Asset 47.9 in the Debtor's Schedules) (the "Paccar Collateral").

The Debtor intends to retain the Paccar Collateral.

The Debtor shall pay the Paccar Secured Claim over a period of 30 months at 6.45% per annum, in 29 monthly installments of $3,419.58 per month and one final payment of all amounts that remain due. Payments shall commence on the 15th day of the month following the Effective Date of the Plan, and shall continue on the 15th date of each month thereafter until the Paccar Secured Claim is paid in full.

If the Paccar Collateral is retained by the Debtor, Paccar shall retain its liens against, and security interest in the Paccar Collateral until the Paccar Secured Claim is paid in full. The Debtor may pre-pay the Paccar Secured Claim at any time during the Plan term without penalty. The Debtor shall timely make all of its payments and continue to insure and maintain the Paccar Collateral. All of the provisions, requirements, terms and conditions contained in the loan documents entered into between Paccar and the Debtor (the "Paccar Loan Documents") shall remain in effect unless expressly waived or amended herein.

If the Debtor fails to make any payment within 10 days of the due date, a late charge will be assessed as provided in the Paccar Loan Documents.

Upon Paccar's written notice to the Debtor of a default under the Plan, the Debtor shall have 10 days to cure. Upon a third default, however, Paccar may enforce its in rem non-bankruptcy rights against the Paccar Collateral without further notice or order of court.

The Debtor shall commence adequate protection payments to Paccar as of June 15, 2024, with all adequate protection payments to be applied against the Paccar Secured Claim. Adequate protection payments shall be $684 per month and shall continue until the Plan is confirmed, at which time the Debtor shall commence payments to Paccar under the Plan.

Class 1(c) is not impaired.

**(d) Class 1(d) – Secured Claim of ITC**

ITC Acceptance Company ("ITC") asserts a secured claim against the Debtor's estate in the amount of $139,008.46 (the "ITC Secured Claim"), secured by a lien on 2022 Kenworth truck (Asset 47.5 in the Debtor's Schedules (the "ITC Collateral")

The Debtor intends to retain the ITC Collateral. The Debtor maintains that the ITC Collateral has a value of $110,000.

The Debtor shall pay ITC the sum of $110,000 (the "ITC Revised Secured Claim") over a period of 60 months in equal monthly payments of principal and interest at 8% per annum, in the amount of $2,230.40 per month. Monthly payments shall commence on the 15th day of the month following the Effective Date of the Plan, and shall continue on the 15th date of each month thereafter until the ITC Revised Secured Claim is paid in full. The remainder of the ITC Secured Claim ($29,008.46) shall be treated as Class 2 general unsecured claim ("ITC Unsecured Claim").

In the event that ITC objects to the Debtor's valuation for the ITC Collateral and the Debtor and ITC cannot mutually agree upon a valuation for the ITC Collateral, the Debtor shall surrender the ITC Collateral to ITC and the ITC Claim shall be treated as a Class 2 general unsecured claim.

If the ITC Collateral is retained, ITC shall retain its liens on and security interest in the ITC Collateral until its Secured Claim, as modified by the Plan, is paid in full.  The Debtor may pre-pay the Revised Secured Claim of ITC at any time during the Plan term without penalty. The Debtor shall timely make all of its payments and continue to insure and maintain the ITC Collateral.  All of the provisions, requirements, terms and conditions contained in the loan documents entered into between ITC and the Debtor (the "ITC Loan Documents") shall remain in effect unless expressly waived or amended herein.

The Debtor shall have 15 days to cure any default under the Plan after written notice thereof of the alleged default.  The Unsecured Claim of ITC shall be treated and paid as a Class 2 unsecured claim.

The Debtor shall commence adequate protection payments to ITC as of June 15, 2024, with all adequate protection payments to be applied against the ITC Revised Secured Claim upon confirmation of the Plan.  Adequate protection n payments shall be $1,552 per month and shall continue until the Plan is confirmed, at which time the Debtor shall commence payments to ITC under the Plan.

Class 1(d) is impaired.

### (e) Class 1(e) – Secured Claims of Anchor Acceptance Corp.

Anchor Acceptance Company ("Anchor") asserts two secured claims against the Debtor's estate in the amount of (a) $27,884.28  (the "Anchor Secured Claim 1-1"), secured by a lien on 2017 Timpte trailer (Asset 47.6 in the Debtor's Schedules) and (b) $44,813.51 (the "Anchor Secured Claim 1-2") secured by 2021 Wilson trailer (Asset 47.7 in the Debtor's Schedules), collectively referred to as "Anchor Collateral"

The Debtor intends to retain the Anchor Collateral. The Debtor maintains that the Anchor Collateral has a value of $70,000, specifically, 2017 Timpte trailer valued at $28,000 and 2021 Wilson trailer valued at $42,000.

The Debtor shall pay Anchor the sum of $27,884.28 (the "Anchor Secured Claim 1-1") over a period of 60 months in equal monthly payments of principal and interest at 7.95% per annum, in the amount of $564.73 per month.

The Debtor shall pay Anchor the sum of $42,000 (the "Anchor Revised Secured Claim 2-1") over a period of 60 months in equal monthly payments of principal and interest at 7.95% per annum, in the amount of $850.60 per month.

Monthly payments shall commence on the 15th day of the month following the Effective Date of the Plan, and shall continue on the 15th date of each month thereafter until the Anchor Revised Secured Claims are paid in full. The remainders of the Anchor Secured Claim 2-1 ($2813.51) shall be treated as Class 2 general unsecured claims ("Anchor Unsecured Claim").

In the event that Anchor objects to the Debtor's valuation for the Anchor Collateral and the Debtor and Anchor cannot mutually agree upon a valuation for the Anchor Collateral, the Debtor shall surrender the Anchor Collateral to Anchor and the Anchor Claim shall be treated as a Class 2 general unsecured claim.

If the Anchor Collateral is retained, Anchor shall retain its liens on and security interest in the Anchor Collateral until its Secured Claims, as modified by the Plan, are paid in full. The Debtor may pre-pay the Revised Secured Claims of Anchor at any time during the Plan term without penalty. The Debtor shall timely make all of its payments and continue to insure and maintain the Anchor Collateral. All of the provisions, requirements, terms and conditions contained in the loan documents entered into between Anchor and the Debtor (the "Anchor Loan Documents") shall remain in effect unless expressly waived or amended herein.

The Debtor shall have 15 days to cure any default under the Plan after written notice thereof of the alleged default. The Unsecured Claim of Anchor shall be treated and paid as a Class 2 unsecured claim.

Class 1(e) is impaired.

**(f) Class 1(f) – Secured Claim of Marlin Business Corporation**

Marlin Business Corporation ("Marlin") asserts a secured claim against the Debtor's estate in the amount of $274,276.82 (the "Marlin Secured Claim"), secured by lines on (a) 2023 Kenworth truck (Asset 47.2 in the Debtor's Schedules and (b) 2021 Kenworth truck (Asset 47.4 in the Debtor's Schedules), collectively referred to as "Marlin Collateral"

The Debtor intends to retain the Marlin Collateral. The Debtor maintains that the Marlin Collateral has a value of $170,000, specifically $100,000 for 2023 Kenworth truck and $70,000 for 2021 Kenworth truck

The Debtor shall pay Marlin the sum of $170,000 (the "Marlin Revised Secured Claim") over a period of 60 months in equal monthly payments of principal and interest at 8.79% per annum, in the amount of $3,511.62 per month. Monthly payments shall commence on the 15th day of the month following the Effective Date of the Plan and shall continue on the 15th date of each month thereafter until the Marlin Revised Secured Claim is paid in full. The remainder of the Marlin Secured Claim ($104,276.82) shall be treated as Class 2 general unsecured claim ("Marlin Unsecured Claim").

In the event that Marlin objects to the Debtor's valuation for the Marlin Collateral and the Debtor and Marlin cannot mutually agree upon a valuation for the Marlin Collateral, the Debtor

shall surrender the Marlin Collateral to Marlin and the Marlin Claim shall be treated as a Class 2 general unsecured claim.

If the Marlin Collateral is retained, Marlin shall retain its liens on and security interest in the Marlin Collateral until its Secured Claim, as modified by the Plan, is paid in full. The Debtor may pre-pay the Revised Secured Claim of Marlin at any time during the Plan term without penalty. The Debtor shall timely make all of its payments and continue to insure and maintain the Marlin Collateral. All of the provisions, requirements, terms and conditions contained in the loan documents entered into between Marlin and the Debtor (the "Marlin Loan Documents") shall remain in effect unless expressly waived or amended herein.

The Debtor shall have 15 days to cure any default under the Plan after written notice thereof of the alleged default. The Unsecured Claim of Marlin shall be treated and paid as a Class 2 unsecured claim.

Class 1(f) is impaired.

### (g) Class 1(g) – Secured Claims of The Huntington National Bank

The Huntington National Bank ("Huntington") asserts two secured claims against the Debtor's estate in the amount of (a) $42,190.72 (the "Huntington Secured Claim 12-1"), secured by a lien on 2020 Volvo truck (Asset 47.8 in the Debtor's Schedules) and (b) $154,385.26 (the "Huntington Secured Claim 13-1") secured by a line on 2023 Kenworth truck (Asset 47.8 in the Debtor's Schedules), collectively referred to as "Huntington Collateral"

The Debtor intends to retain the Huntington Collateral. The Debtor maintains that the Huntington Collateral has a value of $140,000, specifically, 2020 Volvo truck valued at $40,000 and 2023 Kenworth truck valued at $100,000.

The Debtor shall pay Huntington the sum of $40,000 (the "Huntington Revised Secured Claim 12-1") over a period of 60 months in equal monthly payments of principal and interest at 6.45% per annum, in the amount of $781.71 per month.

The Debtor shall pay Huntington the sum of $100,000 (the "Huntington Revised Secured Claim 13-1") over a period of 60 months in equal monthly payments of principal and interest at 8.8% per annum, in the amount of $2,066.14 per month.

Monthly payments shall commence on the 15th day of the month following the Effective Date of the Plan, and shall continue on the 15th date of each month thereafter until the Huntington Revised Secured Claims are paid in full. The remainders of the Huntington Secured Claims ($56,575.98) shall be treated as Class 2 general unsecured claims ("Huntington Unsecured Claim").

In the event that Huntington objects to the Debtor's valuation for the Huntington Collateral and the Debtor and Huntington cannot mutually agree upon a valuation for the

Huntington Collateral, the Debtor shall surrender the Huntington Collateral to Huntington and the Huntington Claim shall be treated as a Class 2 general unsecured claim.

If the Huntington Collateral is retained, Huntington shall retain its liens on and security interest in the Huntington Collateral until its Secured Claims, as modified by the Plan, are paid in full. The Debtor may pre-pay the Revised Secured Claims of Huntington at any time during the Plan term without penalty. The Debtor shall timely make all of its payments and continue to insure and maintain the Huntington Collateral. All of the provisions, requirements, terms and conditions contained in the loan documents entered into between Huntington and the Debtor (the "Huntington Loan Documents") shall remain in effect unless expressly waived or amended herein.

The Debtor shall have 15 days to cure any default under the Plan after written notice thereof of the alleged default. The Unsecured Claim of Huntington shall be treated and paid as a Class 2 unsecured claim.

The Debtor shall commence adequate protection payments to Huntington as of June 15, 2024, with all adequate protection payments to be applied against the Huntington Revised Secured Claims upon confirmation of the Plan. Adequate protection payments shall be $1484.65 per month for claim 12-1, and $1897.79 for claim 13-1 and shall continue until the Plan is confirmed, at which time the Debtor shall commence payments to Huntington under the Plan.

Class 1(g) is impaired.

### (h) Class 1(h) – Secured Claim of Amur Equipment Finance

Amur Equipment Finance ("Amur") holds a secured claim against the Debtor's estate in the amount of approximately $50,000 (the "Amur secured claim"), secured by a lien on 2020 Kenworth truck (Asset 47.3 in the Debtor's Schedules ( "Amur Collateral". Amur did not assert a claim in this case.

The Debtor intends to retain the Amur Collateral. The Debtor maintains that the Amur Collateral has a value of $35,000

The Debtor shall pay Amur the sum of $35,000 (the "Amur Revised Secured Claim") over a period of 60 months in equal monthly payments of principal and interest at 6% per annum, in the amount of $676.65 per month. Monthly payments shall commence on the 15th day of the month following the Effective Date of the Plan, and shall continue on the 15th date of each month thereafter until the Amur Revised Secured Claim is paid in full. The remainder of the Amur Secured Claim ($15,000) shall be treated as Class 2 general unsecured claim ("Amur Unsecured Claim").

In the event that Amur objects to the Debtor's valuation for the Amur Collateral and the Debtor and Amur cannot mutually agree upon a valuation for the Amur Collateral, the Debtor shall surrender the Amur Collateral to Amur and the Amur Claim shall be treated as a Class 2 general unsecured claim.

If the Amur Collateral is retained, Amur shall retain its lien on and security interest in the Amur Collateral until its Secured Claim, as modified by the Plan, is paid in full. The Debtor may pre-pay the Revised Secured Claim of Amur at any time during the Plan term without penalty. The Debtor shall timely make all of its payments and continue to insure and maintain the Amur Collateral. All of the provisions, requirements, terms and conditions contained in the loan documents entered into between Amur and the Debtor (the "Amur Loan Documents") shall remain in effect unless expressly waived or amended herein.

The Debtor shall have 15 days to cure any default under the Plan after written notice thereof of the alleged default. The Unsecured Claim of Amur shall be treated and paid as a Class 2 unsecured claim.

Class 1(h) is impaired.

### (i) Class 1(i) – Secured Claim of Small Business Administration

Small Business Administration ("SBA Bank") asserts a secured claim against the Debtor's estate in the amount of $530,704.07 (the "SBA Secured Claim"), secured by a lien on the Debtor's inventory, chattel paper, accounts, equipment and general intangibles (the "SBA Collateral").

The Debtor estimates that the value of the SBA Bank Collateral as of the Petition Date was $56,000, consisting of (a) $28,000 in general account funds; (b) $4,000 in accounts receivable; and (c) $24,000 in equipment value.

The Debtor shall pay SBA the sum of $56,000 (the "SBA Revised Secured Claim") over a period of 60 months in equal monthly payments of principal and interest at 3.75% per annum, in the amount of $1,025.02 per month. Monthly payments shall commence on the 15th day of the month following the Effective Date of the Plan, and shall continue on the 15th date of each month thereafter until the SBA Revised Secured Claim is paid in full.

SBA shall retain its liens on and security interest in the SBA Collateral until its Secured Claim, as modified by the Plan, is paid in full. The Debtor may pre-pay the Secured Claim of SBA at any time during the Plan term without penalty. The Debtor shall timely make all of its payments and continue to insure and maintain the SBA Collateral. All of the provisions, requirements, terms and conditions contained in the loan documents entered into between SBA and the Debtor (the "SBA Loan Documents") shall remain in effect unless expressly waived or amended herein.

The Debtor shall have 15 days to cure any default under the Plan after written notice thereof of the alleged default. The remaining amount of the SBA Claim ($48,433.15) shall be treated and paid as a Class 2 unsecured claim.

Class 1(f) is impaired

**3.02    Class 2 - Allowed Unsecured Claims**

Holders of allowed unsecured claims shall receive a pro rata share of the Unsecured Creditor Payments on an annual basis for a period of 5 years beginning on the 1st anniversary of the Effective Date of the Plan, and continuing yearly for another 4 years.

The Unsecured Creditor Payments shall equal $25,000 in the aggregate and each yearly payment shall be $5,000 for five (5) payments.

Based upon the unsecured claims (which includes deficiency claims of secured creditors), the estimated distribution to unsecured creditors is 2%

No distribution will be made for unsecured claims which were (i) scheduled as disputed; and (ii) no timely proof of claim was filed.

**3.03    Class 3 – Equity Security Holders**

Equity security holders shall retain their interests in the Debtor. In addition, the principal of the Debtor will be entitled to a salary for his work on behalf of the Debtor. *See* Section 7.08 below.

**ARTICLE IV**
*History of the Debtor, Description of Assets (Liquidation Analysis)
and Projected Income*

4.01    <u>History of the Debtor</u>

FOUR WIND TRUCKING was started in 2014 as a logistics family business by husband and wife, Bogdan and Paulina Czernecki. The business was started with one truck and one trailer, whereas Bogdan was driving, and Paulina was working as a dispatcher. Over the next 10 years, the business grew into 12 trucks and 12 trailers, employing sub-contractors to deliver the loads on behalf of the FOUR WIND TRUCKING. The Debtor developed a niche in delivering agricultural products purchasing specific equipment to deliver livestock and produce. Due to overall decline in trucking industry, the Debtor experienced a downturn in its business as well and is now forced to seek bankruptcy protection in order to cut down its costs of operations.

4.02    <u>Assets of the Debtor/Liquidation Analysis</u>

As of the Petition Date, the Debtor's assets consisted of $28,000 in its bank account at 5/3 Bank; $4,000 in accounts receivable and $34,000 in paid off equipment, 2020 Utility trailer

valued at $20,000, 2020 Hyundai trailer, valued at $8,000, 2006 Chapparal trailer, valued at $1000 and 2016 Rutiner trailer, valued at $5,000, all encumbered by a UCC lien filed by the Small Business Administration ("SBA"). The Debtor's assets also consisted of the financed trucks and trailers, which are also fully encumbered by liens of various secured parties (set forth above).

If the Debtor were to be liquidated, creditors would receive no distribution on their claims. The funds to be paid to creditors under the Plan exceeds the zero distribution they would receive upon liquidation. As a result, creditors will derive the most benefit from allowing the Debtor to restructure and generate income to satisfy the payments under the Plan.

A liquidation analysis is attached hereto as Exhibit B.

4.03   Projected Income

The Debtor must show that it will have enough cash over the life of the Plan to make the required Plan payments and operate its business.

A copy of the Debtor's 5-year projections is attached hereto as Exhibit C. The Debtor's financial projections show that the Debtor will have cumulative projected disposable income (as defined by Section 1191(d) of the Bankruptcy Code for the period described in Section 1191(c)(2) sufficient to pay the required payments under the Plan.

The Plan is a 5 year plan. The final Plan payment will be in approximately 2029.

4.04   Operations During Chapter 11 Proceeding

Attached as Exhibit D is a summary of the Debtor's operating reports filed in the Chapter 11 proceeding. It is difficult to compare the operations during the Chapter 11 proceeding and future projected operations given the fact that the trucking industry is still impacted by the COVID-19 epidemic, regulations, and diesel prices remaining high. However, the Debtor has estimated future income based upon current and anticipated trends in the trucking industry post-COVID-19.

# ARTICLE V
*Allowance and Disallowance of Claims and Estimation of Claims*
*And Litigation Claims*

5.01   Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order and as to which either (a) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (b) no proof of claim has been filed and the Debtor has scheduled the claim as disputed, contingent or unliquidated.

5.02    Delay of Distribution on a Disputed Claim.  No distribution shall be made on account of a disputed portion of a claim unless or until the disputed portion of the claim is allowed by a final non-appealable order.  The Debtor will make distributions on the non-disputed portion of a claim, when such payments are due.

5.03    Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Bankruptcy Rule 9019.  After confirmation of the Plan, the Reorganized Debtor may settle, compromise or otherwise resolve an objection to claim without approval of the Bankruptcy Court.

5.04    Estimation of Claims. The Debtor may, at any time, request that the Bankruptcy Court estimate any disputed claim pursuant to §502(c) of the Bankruptcy Code regardless of whether the Reorganized Debtor has previously objected to the claim.  In the event that the Bankruptcy Court estimates a disputed claim, the estimated amount may constitute either the amount of the allowed claim or a maximum limitation of the claim.

5.05    Prepayment of Claims. The Reorganized Debtor reserves the right to offer prepayment of claims to creditors before the expiration of the Plan without penalty or premium.  Acceptance of prepayment by creditors shall be purely voluntary.  The prepayment shall be conditioned upon no affect or impairment of the Reorganized Debtor's ability to satisfy its obligations under the Plan.

5.06    Lapsed and Unclaimed Distributions.

(a)    Any distribution that has not been cleared within ninety (90) days of the date of the distribution will lapse.  Lapsed distributions will revert to the court and disposed of under chapter 129 of title 28

(b)    If any distribution is returned as undeliverable, no further distributions to such creditor will be made unless the Debtor is notified in writing of the creditor's current address.  Upon receipt of the notification, the Debtor will remit all missed distributions to the creditor without interest.  All claims for undeliverable distributions must be made on or before the first anniversary of the Effective Date of the Plan.  If any claims are not made within that time, all unclaimed distributions will revert to the Debtor.  Nothing in the Plan will require the Debtor to attempt to locate any holder of an allowed claim.

5.07    Litigation Claims

The Debtor does not have any litigation claims.

## ARTICLE VI
*Provisions for Executory Contracts and Unexpired Leases*

6.01    Rejected Executory Contracts and Unexpired Leases. The Debtor will be conclusively deemed to have rejected all executory contracts or unexpired leases not expressly

assumed under this Article 6 as of the Effective Date. The Debtor has no executory contracts to assume.

## ARTICLE VII

### *General Provisions*

7.01    Definitions and Rules of Construction. The definitions and rules of construction set forth in §§101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. These definitions are supplemented by the following:

(a)    The Effective Date ("Effective Date") of the Plan will be the 30th day after the Order confirming the Plan is a final order.

(b)    The "Reorganized Debtor" shall refer to the Debtor as an entity created upon the entry of an order confirming the Plan.

7.02    Conditions to Effective Date. The following conditions precedent may affect the occurrence of the Effective Date: (1) failure to obtain confirmation; (2) modification of the Plan, which requires approval of the court; (3) the Order of Confirmation is vacated, amended, modified or stayed; or (4) the Order of Confirmation is the subject of any appeal, reconsideration or other review.

7.03    Contested Plan Confirmation. If the Debtor does not receive sufficient votes to confirm the Plan, pursuant to Section 1191(b), the Debtor shall seek to confirm the Plan as it does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired and have not accepted the Plan. In the event of a contested confirmation, the Debtor shall remain as the Disbursing Agent for all Plan payments.

7.04    Remedies Upon Default. In the event that the Debtor fails to make its Plan payments when due, creditors may seek relief from the Plan injunction to enforce the terms of the Plan or, if the case has been closed, may enforce the terms of the Plan without further relief from the Bankruptcy Court.

7.05    Severability. If any provision of this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

7.06    Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of the entity.

7.07    Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

7.08    Controlling Effect.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Illinois govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

7.09    Corporate Governance.  Debtor proposes to issue one class of shares in the Reorganized Debtor – 100% owned by Bogdan Czernecki. Therefore, pursuant to §1123(a)(6) of the Bankruptcy Code, the Debtor will not issue nonvoting equity securities. Each class of securities will have the power to vote in the governance of the Debtor.  No class of securities will have preference over another class with respect to dividends.

7.10    Disbursing Agent.  Bogdan Czernecki will be the disbursing agent for the Debtor for the purpose of distributions and payments to be made pursuant to the Plan.  Bogdan Czernecki will continue in her role as President of the Debtor and will be entitled to receive a salary from the Debtor in the amount listed on the Projections attached to this Plan as Exhibit C.

7.11    Notice:  Any Notice of Default shall be sent to the Debtor's counsel by e-mail to David.freydin@freydinlaw.com and to the Debtor at FOUR WIND TRUCKING, 1460 Market St, Suite 201, Des Plaines, IL 60016, and shall be effective when sent.  Debtor may notify creditors, in writing, of any change of address for either the Debtor or counsel.

## ARTICLE VIII
*Discharge, Return of Property and Vesting of Assets*

8.01    Discharge. Except as otherwise provided in the Plan or by Court Order, if the Plan is confirmed consensually, on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the Effective Date, to the extent specified in §1141(d)(1)(A) of the Bankruptcy Code.  However, the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in §1141(d)(6)(A) if a timely complaint was filed in accordance with Bankruptcy Rule 4007(c), or (iii) of a kind specified in §1141(d)(6)(B).  After the Effective Date of the Plan, your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

8.02    Vesting of Assets.  On the Effective Date of the Plan, Debtor's right, title and interest in and to its assets shall vest with the Reorganized Debtor.

## ARTICLE IX
*Retention of Jurisdiction*

The Bankruptcy Court shall retain jurisdiction over this Chapter 11 Case for the following purposes:

10.01   Resolution of any and all objections to claims and requests to estimate claims.

4858-5696-7518, v. 1

      10.02  Determination of all questions and disputes regarding all causes of action, controversies, disputes or conflicts, whether or not subject to pending actions as of the Effective Date between (a) the Reorganized Debtor and any other party or (b) otherwise under the Plan, the Confirmation Order or any other order issued by the Bankruptcy Court in connection with this Chapter 11 Case.

      10.03  The correction of any defect and the curing of any omission or inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan.

      10.04 Modification of the Plan after confirmation pursuant to the Bankruptcy Code and the Bankruptcy Rules.

      10.05  Allowance of all claims and applications for payment of Administrative Claims and professional fees and expenses which may be paid by the Reorganized Debtor or its estate pursuant to the provisions of the Bankruptcy Code, and resolution of all disputes pertaining thereto.

      10.06  Entry of a Final Order confirming substantial consummation of the Plan and closing the Chapter 11 Case.

[Remainder of Page Intentionally Left Blank]

Dated this 14th day of October, 2024

                                    Respectfully Submitted:

                                    FOUR WIND TRUCKING LLC

                                    By: _____
                                          Bogdan Czernecki
                                          Its President

                                    By: ___/s/ David Freydin_____
                                          One of its Attorneys

David Freydin
Law Offices of David Freydin, PC
8707 Skokie Blvd. Suite 312
Skokie, IL 60076
(847) 972-6157
David.freydin@freydinlaw.com

4858-5696-7518, v. 1